## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 15 2018, 11:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael Frischkorn
Frischkorn Law LLC
Fortville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Helen L. Poynter, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff* | November 15, 2018 <br><br> Court of Appeals Case No. 18A-CR-1463 <br><br> Appeal from the Hamilton Superior Court <br><br> The Honorable William J. Hughes, Judge <br><br> The Honorable Jeffrey Eggers, Senior Judge <br><br> Trial Court Cause No. 29D03-1702-CM-1305 |

**Vaidik, Chief Judge.**

# Case Summary

Helen L. Poynter was convicted of four counts of Class A misdemeanor invasion of privacy for sending Christmas cards to her son, daughter-in-law, and two grandchildren in violation of a protective order that the family had obtained against her in Wisconsin. Helen now appeals, arguing that the evidence is insufficient to prove that she violated the Wisconsin protective order. We affirm.

# Facts and Procedural History

On October 4, 2013, Norman Poynter, his wife Lynn, and his two sons G.P. and N.P. ("the family") obtained an "INJUNCTION – Harassment (Order of Protection – 30711)" against Helen in a Wisconsin trial court (everyone lived in Wisconsin at the time). The protective order, which expired October 4, 2017, provides:

> THE COURT ORDERS:
>
> 1. [Helen] cease or avoid the harassment of the [family].
>
> 2. [Helen] avoid the [family's] residence and/or any premises temporarily occupied by the [family].
>
> 3. [Helen] avoid contact that harasses or intimidates the [family]. **Contact includes: contact at [the family's] home, work, school, public places, in person, by phone, in writing, by electronic communication or device, or in any other manner.**

* * * * *

6. Other: … Helen Poynter must stay 1,000 feet away from the [family].

Ex. 1.

In January 2015, the family moved to Noblesville, about five hours away from where they lived in Wisconsin, for Norman's new job. The family did not tell Helen that they were moving or have any contact with her. Tr. p. 68. The family also did not "advertise [their] new contact information online." *Id.*

In December 2016, the family received three Christmas cards from Helen in the mail: one for Norman and Lynn, one for G.P., and one for N.P. The letters, which were sent by USPS Priority Mail with tracking numbers, *see* Exs. 3-5, contained handwritten notes and photographs, and the boys' cards each contained a $25.00 cashier's check.

About a month later, on January 29, 2017, G.P. was home alone when Helen knocked on the front door. G.P. called his father, who told him to lock the door and not answer it. After about a minute, Helen left. The family's home-surveillance system captured this incident. The family contacted the police.

Thereafter, the State charged Helen with five counts of Class A misdemeanor invasion of privacy, Count 1 for going to the family's house and Counts 2-5 (one for each family member) for sending the Christmas cards. A jury trial was held in May 2018. The video from the family's home-surveillance system was

admitted into evidence as well as the Christmas cards, photographs, and cashier's checks. During closing argument, defense counsel argued that the Christmas cards were not "demonstratively harassing or intimidating" because they contained "[e]xpressions of love and endearment" and "[s]easonal greetings." Tr. pp. 120-21. The State argued in response:

> They didn't want contact and it's hard to be more clear than that. . . . They got the protective order out of Wisconsin. They moved and never told [Helen] where they were going. They never went out of their way to share. Never said what was going on. . . . The contact itself from her is the harassment.

*Id.* at 123. The jury found Helen guilty as charged, and the trial court sentenced her to concurrent terms of 8 days executed and 357 days suspended to probation.

[7]    Helen now appeals her convictions for Counts 2-5 only.

# Discussion and Decision

[8]    Helen contends that the evidence is insufficient to support her convictions for Counts 2-5. When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. *Sallee v. State*, 51 N.E.3d 130, 133 (Ind. 2016). It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.* It is not necessary that the evidence

"overcome every reasonable hypothesis of innocence." *Id.* (quotation omitted). The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007).

[9] Indiana Code section 35-46-1-15.1(a)(9) provides that a person who knowingly or intentionally violates "an order issued in another state that is substantially similar to an order described in subdivisions (1) through (8)" commits Class A misdemeanor invasion of privacy. At trial, the parties stipulated that "the Wisconsin 'INJUNCTION – Harassment (Order of Protection – 30711)' that was entered . . . on October 4, 2013, is substantially similar to a protective order to prevent domestic or family violence" under Section 35-46-1-15.1(a)(1). Appellant's App. Vol. II p. 96; Tr. pp. 106-07.

[10] Helen argues that she did not "harass" the family as prohibited by the Wisconsin protective order and that the State therefore failed to prove that she violated it. According to Wisconsin law, "harassment" means:

> 1. Striking, shoving, kicking or otherwise subjecting another person to physical contact; engaging in an act that would constitute abuse under s. 48.02(1), sexual assault under s. 940.225, or stalking under s. 940.32; or attempting or threatening to do the same.
>
> **2. Engaging in a course of conduct or repeatedly committing acts which harass or intimidate another person and which serve no legitimate purpose.**

Wis. Stat. § 813.125(1) (emphasis added). Helen does not dispute that she engaged in "a course of conduct" or "repeatedly" committed acts for purposes of Wis. Stat. § 813.125(1). Rather, she argues that she had a "legitimate reason" for contacting the family. Specifically, she asserts that "sending Christmas cards to her children and grandchildren is a legitimate reason that is not intended to harass or intimidate." Appellant's Br. p. 10. But Helen does not explain why this is a "legitimate reason." The evidence shows that not only did Norman and his family get a protective order against Helen, but they no longer communicated with her and did not tell her that they were moving five hours away. Helen then sent Christmas cards to the family. As the State points out on appeal, Helen sent them by Priority Mail with tracking numbers, which suggests that she was trying to confirm the family's location. Appellee's Br. p. 11; *see also* Tr. p. 146 (trial judge saying he agreed with the jury's verdict, in part, because the Christmas cards were sent "with tracking numbers"). And when there was no response from the Christmas cards, Helen showed up at their front door. The evidence is sufficient to prove that Helen violated the Wisconsin protective order. We therefore affirm her convictions for Counts 2-5.

[11] Affirmed.

Riley, J., and Kirsch, J., concur.